IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAMON CLARK, | ) |
| No. K03716, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|   vs. | )   Case No. 16-cv-00269-SMY |
| | ) |
| BART LIND, | ) |
| JACQUELINE LASHBROOK, | ) |
| SHERRY BENTON, | ) |
| SEAN FURLOW, and | ) |
| JOHN/JANE DOE, | ) |
| | ) |
|       Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Ramon Clark is an inmate housed in Pinckneyville Correctional Center. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this action for deprivations of his constitutional rights with respect to a series of related events Plaintiff attributes to retaliation for his litigation activities.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not

plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

According to the Complaint, Plaintiff brought a legal action against multiple prison officials in the central district of Illinois. In July 2015, Plaintiff learned that prison officials at Pinckneyville Correctional Center (located in the southern district of Illinois) were interfering with his incoming and outgoing mail involving Extended Hands Gift Shop, Inc. Extended Hands acts as an intermediary, posting Plaintiff's outgoing messages on a website and mailing incoming messages to Plaintiff. On several occasions, "Defendants" returned incoming mail from Extended Hands. "Internal Affairs" also blocked an outgoing payment to Extended Hands. Plaintiff sent written complaints to "Defendants," to no avail.

On July 12, 2015, an outgoing message and payment to Extended Hands were returned to Plaintiff along with a note indicating that the outgoing mail had been barred by the prison's Internal Affairs Unit. Plaintiff eventually spoke to Internal Affairs Officer Lind who explained that the mail had been blocked because Lind had not had time to look at it. Plaintiff told Lind that he thought his mail was blocked in retaliation for the lawsuit he had filed against prison officials in the central district. Lind replied, "You pissed a lot of people off, Clark, maybe if you [drop] your suit you'll get your mail back." (Doc. 1, p. 3). Plaintiff indicated that he intended to file a grievance.

Plaintiff wrote to Warden Lashbrook, but never received a response. However, a grievance officer did review Plaintiff's grievance on August 12, 2015 and met with Internal Affairs. On August 20, 2015, an unidentified Internal Affairs officer searched Plaintiff's cell while two high-ranking officers observed. From Plaintiff's perspective, the search was retaliatory. Contraband was discovered in Plaintiff's property box and under his mattress, but Plaintiff's cellmate admitted during the search that the contraband was his. Although Officer Lind could have used his discretion and not involve Plaintiff, Plaintiff was forced to undergo a strip search, was taken to segregation and was issued a disciplinary report. Ultimately, the disciplinary charge was dismissed. Plaintiff attributes Lind's action to retaliation. He notes that he was sent to segregation just one day before his scheduled time in the law library. Plaintiff further contends that hundreds of dollars were stolen from him during the cell search.

Plaintiff alleges that all Defendants—Officer Lind and the head of Internal Affairs, Sean Furlow, in particular—conspired to retaliate against him for his litigation activities. He further alleges that Officer Lind and Administrative Review Board ("ARB") member Sherry Benton (who reviews grievance appeals) did nothing to ensure Plaintiff was treated "humanely" and "equally." He also asserts Lashbrook and Benton's failure to provide adequate supervision allowed the aforementioned violations to occur, and they took no corrective action. Finally, Plaintiff contends that he was unable to use Extended Hands, he was twice denied counsel, could not access legalzoom.com and was at a disadvantage in litigating his case.

Plaintiff seeks declaratory judgment, compensatory and punitive damages as well as unspecified injunctive relief by way of a temporary restraining order, preliminary injunction and permanent injunction.

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1:** **All Defendants conspired to retaliate against Plaintiff for his litigation and/or grievance activities, in violation of the First Amendment;**

**Count 2:** **Defendant Lind blocked Plaintiff's incoming and outgoing mail from Extended Hands in retaliation for Plaintiff's litigation activities, in violation of the First Amendment;**

**Count 3:** **Internal Affairs and "John/Jane Doe" mailroom staff, under the direction of Defendant Furlow, blocked Plaintiff's incoming and outgoing mail from Extended Hands in retaliation for Plaintiff's litigation activities, in violation of the First Amendment;**

**Count 4:** **Defendant Lind caused Plaintiff's cell to be searched, and allowed Plaintiff to be issued a disciplinary report, strip searched and taken to segregation, all in retaliation for Plaintiff's litigation activities, in violation of the First Amendment;**

**Count 5:** **Defendants Lind and Benton failed to ensure Plaintiff was treated humanely and equally; and**

**Count 6:** **Defendants Lashbrook and Benton failed to properly supervise others, thereby allowing Plaintiff's rights to be violated.**

Any intended claims not recognized by the Court should be considered inadequately pleaded and dismissed without prejudice.

## Discussion

### *Count 1*

From Plaintiff's perspective, all defendants have participated in a conspiracy to retaliate against him for his litigation and/or grievance activities. Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th

Cir. 2006)). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304–05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir.1999)).

Here, the Complaint offers nothing more than an assertion that there was a conspiracy. There is no factual basis for, or suggestion of a "meeting of the minds." Therefore, the overarching conspiracy claim in Count 1 will be dismissed without prejudice.

### *Count 2*

Count 2 is premised upon the allegations that Internal Affairs Officer Lind blocked Plaintiff's mail to and from Extended Hands in retaliation for Plaintiff's litigation activities. According to the Complaint, Lind all but admitted that that he was motivated by retaliation.

As summarized in *Kaufman v. McCaughtry*, 419 F.3d 678, 685-686 (7th Cir. 2005): "Inmates have a First Amendment right both to send and receive mail, *Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Rowe,* 196 F.3d at 782." Nevertheless, "[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). In order to state a First Amendment retaliation, a plaintiff must demonstrate that: "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a

motivating factor" behind the retaliatory actions. *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006); see also *Woodruff v. Mason,* 542 F.3d 545, 551 (7th Cir. 2008).

Plaintiff's complaint allegations implicate the First Amendment in several respects. Generally, inmates have a First Amendment right to send and receive mail. *Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir. 1999). Non-frivolous administrative grievances can also constitute protected activity. *Hasan v. U.S. Dep't of Labor,* 400 F.3d 1001, 1005 (7th Cir. 2005). Similarly, filing a law suit is protected under the First Amendment. *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005). Cutting off Plaintiff's communication with friends and family, and his ability to secure legal research and the assistance of counsel via Extended Hands could reasonably be said to have a deterrent effect. Thus, a colorable First Amendment claim has been stated against Defendant Lind and Count 2 shall proceed.

### *Count 3*

It is alleged in Count 3 that Internal Affairs and "John/Jane Doe" mailroom staff, under the direction of Defendant Furlow, blocked Plaintiff's incoming and outgoing mail in retaliation for Plaintiff's litigation activities. Although Count 3 is similar to Count 2, Count 3 cannot proceed in its entirety.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Allegations that senior officials were personally responsible for creating the policies, practices and customs that caused a constitutional deprivation can suffice to demonstrate personal involvement for purposes of Section 1983 liability. *See Doyle v.*

*Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002). However, the *respondeat superior* doctrine—supervisory liability—does not apply to actions filed under 42 U.S.C. § 1983. *See,* e.g., *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).

"John/Jane Doe" mailroom personnel are alleged to have blocked incoming and outgoing mail in retaliation for Plaintiff's litigation activities, so that aspect of Count 3 can proceed. The Complaint specifically indicates that, according to Internal Affairs Officer Lind, there was no Internal Affairs policy to block mail to and from Extended Hands. It appears that Plaintiff is merely attempting to impose supervisory liability on the head of Internal Affairs, Sean Furlow. As drafted, the Complaint does not offer a sufficient factual basis for a claim against Furlow in his individual or official capacities. Therefore, those aspects of Count 3 shall be dismissed without prejudice. Because there is no other viable claim against Furlow, he will be dismissed from this action without prejudice.

*Count 4*

In Count 4, it is alleged that Defendant Lind caused Plaintiff's cell to be searched and allowed Plaintiff to be issued a disciplinary report, strip searched and taken to segregation, all in retaliation for Plaintiff's litigation activities. As such, Count 4 states a colorable First Amendment retaliation claim and shall proceed.

Insofar as Plaintiff claims that hundreds of dollars were stolen from his cell during the search, any intended property claim should be considered dismissed without prejudice. Property claims of this nature are generally filed in the Illinois Court of Claims. *See Turley v. Rednour*, 729 F.3d 645, 653 (7th Cir. 2013).

*Count 5*

Count 5 is based entirely upon allegations regarding Defendants Lind and Benton failing to ensure that Plaintiff was treated "humanely" and "equally."  It is unclear what Plaintiff is referring to.  This bare assertion is insufficient to state an Eighth Amendment claim related to the conditions of Plaintiff's confinement or a Fourteenth Amendment due process claim.  Accordingly, Count 5 will be dismissed without prejudice.

*Count 6*

Read very generously, the allegation in Count 6 that Defendants Lashbrook and Benton failed to properly supervise others, thereby allowing Plaintiff's rights to be violated, states a constitutional claim.  As noted above, the *respondeat superior* doctrine—supervisory liability—does not apply to actions filed under 42 U.S.C. § 1983.  *See,* e.g., *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).  However, an official who knows about unconstitutional conduct via inmate correspondence and facilitates, condones, approves or turns a blind eye, may be liable.  *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015).  The grievance documents attached to the Complaint provide a sufficient basis for alerting officials to possibly unconstitutional retaliation (*see* Doc. 1-1, pp. 13-16).  It appears that Warden Lashbrook and ARB member Benton reviewed the documents but did not afford Plaintiff any relief; instead, characterizing the decision to block Plaintiff's mail as "an Administrative decision."  Count 6 shall proceed against Defendants Lashbrook and Benton.

**Temporary Restraining Order/Preliminary Injunctive Relief**

The Complaint includes a general request for a temporary restraining order, preliminary injunction and permanent injunction directing the Defendants "to cease their harassment, threats

and ban of Plaintiff's mail service" (*see* Doc. 1, p. 11).   No other discussion is offered, and no independent motion for injunctive relief has been filed.

A temporary restraining order ("TRO") is an order issued without notice to the party to be enjoined that may last no more than 14 days.  FED.R.CIV.P. 65(b)(2).  A TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  FED.R.CIV.P. 65(b)(1)(A).  Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

A preliminary injunction, unlike a TRO under Rule 65(b), is issued only after the adverse party is given notice and an opportunity to oppose the motion.  FED.R.CIV.P. 65(a)(1).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008) (citations omitted).   A permanent injunction is, of course, a final remedy available only if Plaintiff's case succeeds on the merits.

Regardless of whether Plaintiff seeks a TRO, preliminary injunction or both, there is no present risk of serious injury nor is there a substantial risk of serious injury in the immediate or foreseeable future.  If Plaintiff's lack of access to Extended Hands is impacting the litigation of his case in the central district of Illinois, he can seek relief in that case.  The Court does not perceive any harm related to the present case.  Therefore, Plaintiff's request for a TRO and/or preliminary injunction will be denied without prejudice.

**Disposition**

IT IS HEREBY ORDERED that, for the reasons stated, **COUNTS 1 and 5** are **DISMISSED without prejudice**.

IT IS FURTHER ORDERED that the claim against Defendant **SEAN FURLOW** in **COUNT 3** is **DISMISSED without prejudice**; **COUNT 3** shall otherwise **PROCEED** against Defendant(s) **"JOHN/JANE DOE"** mailroom staff. Because there are no other claims pending against him, Defendant **SEAN FURLOW** is **DISMISSED without prejudice**.

IT IS FURTHER ORDERED that the property claim within **COUNT 4** is **DISMISSED without prejudice**; the First Amendment retaliation claim against Defendant **BART LIND** in **COUNT 4** shall **PROCEED**.

IT IS FURTHER ORDERED that **COUNT 2** against Defendant **BART LIND** and **COUNT 6** against Defendants **JACQUELINE LASHBROOK and SHERRY BENTON** shall **PROCEED**.

IT IS FURTHER ORDERED that the Clerk of Court shall have the record reflect that the complaint (Doc. 1) contains a motion for a TRO and preliminary injunction; that motion is **DENIED without prejudice**.

The Clerk of Court shall prepare for Defendants **BART LIND, JACQUELINE LASHBROOK and SHERRY BENTON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.

Service shall not be made on the unknown **"JOHN/JANE DOE"** defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is

**ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for

disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* may have been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 18, 2016**

                                           **s/ STACI M. YANDLE**
                                           **United States District Judge**