IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RAMON CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-269-SMY-RJD |
| | ) | |
| BART LIND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Ramon Clark, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). Plaintiff alleges that he was retaliated against for filing lawsuits against prison officials. Following threshold review, Plaintiff proceeds on the following claims:

> Count 1: Defendant Lind blocked Plaintiff's incoming and outgoing mail from Extended Hands in retaliation for Plaintiff's litigation activities, in violation of the First Amendment;
>
> Count 2: Chalene Hale, Krista Piotrowski and Sean Furlow blocked Plaintiff's incoming and outgoing mail from Extended Hands in retaliation for Plaintiff's litigation activities, in violation of the First Amendment;
>
> Count 3: Defendant Lind caused Plaintiff's cell to be searched, and allowed Plaintiff to be issued a disciplinary report, strip searched and taken to segregation, all in retaliation for Plaintiff's litigation activities, in violation of the First Amendment;
>
> Count 4: Defendants Lashbrook and Benton failed to properly supervise others, thereby allowing Plaintiff's rights to be violated.

(Doc. 7).

This matter is now before the Court on the Defendants' Motion for Summary Judgment (Doc. 80). Plaintiff filed a Response (Doc. 90). For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED**.

## Factual Background

At all relevant times, Plaintiff Ramon Clark was an inmate in IDOC. Clark hired Extended Hands Gift Shop, Incorporated ("Extended Hands") to stay in touch with friends and family (Plaintiff's Deposition, Doc. 81-6 at 20-21). Extended Hands is a communication service provider that acts as a personal assistant to offenders (*Id.* at 20). It offers a number of services including, setting up dating sites for offenders, accessing offenders' Facebook accounts, ordering books, sending holiday and birthday cards, and sending gifts to friends and family (*Id.* at 20-21).

Around early 2013, while incarcerated at Illinois River Correctional Center ("Illinois River"), Clark sent Extended Hands money from his account and they opened up an email account, a Facebook account, and set him up on multiple dating sites (*Id.* at 22-23). Clark's communication with Extended Hands was always through written correspondence (*Id.* at 24). If Clark wanted to become "friends" with someone on Facebook, he would provide the name and the school they attended to Extended Hands. The company would run a search and if they found the person, they would send a friend request (*Id.* at 26-27). If the friend request was accepted, Extended Hands would notify Clark and provide a picture to confirm it was the correct person. He would then send a message back to Extended Hands to post (*Id*. at 27). If someone posted on Clark's wall, or sent a message on one of the dating sites, Extended Hands would print the message or picture and mail it to Clark (*Id.* at 28). Clark told Extended Hands to accept any and all friend requests due to the time gap caused by the mail. If it was someone he did not know, he would have them deleted (*Id.* at 31). Clark corresponded weekly with Extended Hands to use Facebook (*Id.* at 33). He paid a flat fee plus a fee per message and transaction (*Id*. at 32).

While at Illinois River, Clark used his Facebook page to post messages regarding alleged abuse by the tactical team (*Id.* at 37). He continued using Extended Hands when he was transferred to Pinckneyville in February of 2015 (*Id.* at 33, 43). Clark sent and received mail from Extended Hands for several months while at Pinckneyville (*Id.* at 38). Around April or May 2015, Clark noticed that he had stopped receiving mail from Extended Hands (*Id.* at 35, 43). He wrote several letters telling them he disapproved of the service they were providing (*Id.*).

Clark received a letter from a friend, Keysha Marrow, on July 7, 2015, informing him that Extended Hands had posted a message to his Facebook page indicating Pinckneyville was returning all of the mail they attempted to send him (*Id*. at 38, 53). Clark attempted to send a letter to Extended Hands on July 7, 2015, to post the message, "I'm being harassed" with a description of what was going on (*Id*. at 38). The letter was returned and stamped, "Disapproved per IA" (*Id.*).

Clark was a member of the Security Threat Group ("STG"), "Black P Stones," when he was a teenager (*Id.* at 94). He had not had any involvement with an STG for over 15-16 years (*Id.* at 93). Defendant Bart Lind, an officer in the Intelligence Unit at Pinckneyville, has as one of his duties to suppress gang activity, also known as STG (Declaration of Bart Lind, Doc. 81-1). Lind informed his superior officer, Defendant Furlow, that he had discovered STG materials on Clark's Facebook page and Furlow concurred with Lind's assessment (*Id.*). Lind then ordered the mailroom staff at Pinckneyville to block correspondence between Clark and Extended Hands (*Id.*).

On July 20, 2015, Clark asked to speak with Lind during a compliance check (Doc. 81-6 at 38.). He asked Lind if there was any specific reason why his mail from Extended Hands was being banned (*Id.*). Clark alleges that Lind told him the mail was being banned because he did not have time to look at it (*Id.* at 39). Clark asked if the ban had something to do with the

lawsuit he was pursuing for being mistreated at Illinois River and Lind allegedly responded, "Well, maybe if you dropped your lawsuit, you'll get your mail service back" (*Id.* at 40). Clark filed a grievance against Lind because of the ban on his mail from Extended Hands (*Id.*).

Clark was still receiving other mail from other sources (*Id.* at 58). He was not blocked from receiving legal mail (*Id.* at 64). Clark alleges that cutting off correspondence with Extended Hands denied him access to legal research which is not offered in the prison's law library (*Id.* at 65). Clark received information from Extended Hands on how to format certain legal documents (*Id.* at 66).

On August 20, 2015, Clark's cell was subjected to a compliance check and shortly thereafter was searched by Bart Lind, Sergeant Wolf, Lieutenant Smith and another officer from the intelligence unit (*Id.* at 41, 79). During the second search, a homemade device called a stinger, an electronic device used to heat water, was found on the top bunk and a melted cord that was used with the electronic device was found in the property box (*Id.* at 83). Clark's cellmate, Offender Love, admitted that the contraband was his (*Id.*). Lind instructed Sergeant Wolf to cuff both Clark and Love and transport them to segregation (*Id.* at 83-84).

Clark was aware Love had the contraband (*Id.* at 85). He had told other officers that Love had it and they told him if Love were caught with it, discipline would be imposed on Love (*Id.* at 86). Clark and Love were both written a disciplinary ticket for the contraband (*Id.* at 89). Clark spent a week in segregation during the investigation (*Id.* at 90). Following the disciplinary hearing, Clark was released from segregation and the ticket was expunged (*Id.* at 90-91). Clark filed grievances against Lind for the banning of his mail from Extended Hands and the contraband disciplinary ticket (*Id.* at 92).

## Discussion

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In deciding a summary judgment motion, the district Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

### Counts 1 and 2 – Extended Hands Ban

Lind argues that Plaintiff's claims in Count 1 must fail because the action of blocking the mail served a legitimate penological interest. Specifically, Lind contends that Clark was blocked from corresponding with Extended Hands to prevent communication with STG members. Defendants Hale, Piotrowski, and Furlow also assert they are entitled to summary judgment on Count 2 for the same reasons.

As an initial matter, Clark concedes in his Response that Hale and Piotrowski had no part in the decision to ban his correspondence with Extended Hands. Therefore, summary judgment will be granted in favor of Hale and Piotrowski as to Counts 1 and 2, and the Court will review reviews the allegations in those Counts only as to Defendants Lind and Furlow.

It is well settled that a prison official who takes action in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). In order for a plaintiff to prevail on a First Amendment retaliation claim, he must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

At the summary judgment stage, the burden of proving causation is split between the parties. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, in order to establish a prima facie case, the plaintiff must produce evidence that his speech was at least a motiving factor in the defendant's decision to take retaliatory action. *Id.* Then, the burden shifts to the defendant to rebut the causal inference raised by the plaintiff's evidence. *Id.* If the defendant fails to counter the plaintiff's evidence, then the defendant's retaliatory actions are considered a "necessary condition" of the plaintiff's harm, and the plaintiff has established the "but-for" causation needed to succeed on his claim. *Id.* On the other hand, an inmate who has evidence that officials were motivated to discipline the prisoner because of protected speech cannot prevail if the officials show, without contradiction, that they would have disciplined him anyway for a legitimate reason. *Greene v. Doruff,* 660 F.3d 975, 978 (7th Cir. 2011).

There is no dispute that Clark's right to file a lawsuit is protected speech under the First Amendment. The alleged deprivation relative to these Counts is banning Clark from receiving mail from Extended Hands. While an allegation of banning mail from one source may not be actionable in and of itself, if the act were taken in retaliation for the exercise of a constitutionally protected right, then it is actionable.

Clark's evidence that the ban was motivated by his filing a lawsuit is the alleged statement by Lind, "maybe if you dropped your lawsuit, you'll get your mail service back." For their part, Lind and Furlow contend that Clark would have had the Extended Hands mail banned regardless of any lawsuit because he was using his Facebook page to communicate with known STG members and to post gang-related material.[1] Clark maintains that while he may have had STG members as friends on his Facebook page, he never used Facebook or Extended Hands to participate in any gang-related activity.

IDOC prohibits offenders from corresponding with STG members. Obviously, if such correspondence were permitted, both staff and inmates would be endangered. Moreover, Lind and Furlow have produced undisputed evidence that Clark's correspondence with Extended Hands would have been stopped, regardless of any retaliatory motive, for the legitimate reason that Clark was receiving messages from known STG members through his Facebook page via correspondence with Extended Hands. Accordingly, Defendants Lind and Furlow are entitled to summary judgment as to Counts 1 and 2.

**Count 3 – Cell Search and Disciplinary Action**

Lind argues that he is also entitled to summary judgment on Count 3 because the cell search and resulting disciplinary ticket to Clark for the contraband found in his cell do not violate his First Amendment rights. As discussed in the Threshold Order, it appeared that Clark was initially claiming the cell search and disciplinary action were in retaliation for filing a lawsuit. However, Clark testified in his deposition that he believes the cell search and disciplinary action were a result of him filing a grievance against Lind for banning his mail.

---

[1] The attached exhibit appears to include only one page from Plaintiff's Facebook page and seven pages from the account of Mr. Johnson one of his Facebook "friends" (Doc. 81-2). Defendants did not attach evidence showing that Clark actually posted any gang-related activity, but they do attach a post showing Mr. Johnson, a STG member, posted once on Clark's Facebook page (*Id.*).

Lind asserts the search of Clark's cell was one of six random cell searches conducted. Clark argues, however, the fact that Lind issued him a ticket even though his cellmate admitted the contraband belonged to him, is evidence that Lind was acting out of retaliation. Even though Clark's cellmate admitted that the contraband was his, it was within the rules for Lind to issue both cellmates a ticket. IDOC Disciplinary Rule 504 provides, "Committed persons are presumed to be responsible for any contraband or other property prohibited by this Part, which is located on their person, within their cell or within areas of their housing… If the committed person produces evidence which convinces the Adjustment Committee or Program Unit that he did not commit the offense, the committed person shall be found not guilty" (Doc. 81-3 at 1). Here, once the disciplinary report was written, the disciplinary committee conducted its investigation and expunged Clark's ticket.

Clark simply offers little evidence to support his claim that the cell search was motivated by retaliation, other than timing. But as the Seventh Circuit has made clear, a plaintiff's reliance on suspicious timing to establish a prima facie retaliation claim will "rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (citations omitted).

With regard to the strip search, a strip search occurs anytime an inmate is sent to segregation and Lind did not participate in the strip search. Even viewing the evidence in the light most favorable to Clark, as the Court must do, the record shows that Lind's actions concerning the ticket would have occurred notwithstanding any retaliatory motive. As such, Lind is entitled to summary judgment as to Count 3.

### Count 4 – Failure to Supervise

Clark's claims against Defendants Lashbrook and Benton are based on their alleged failure to supervise, thereby allowing Plaintiff's rights to be violated. Section 1983 creates a

cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Evidence indicating that senior officials were personally responsible for creating the policies, practices and customs that caused a constitutional deprivation may be sufficient to demonstrate personal involvement for purposes of Section 1983 liability. *See Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 615 (7th Cir. 2002). However, the *respondeat superior* doctrine—supervisory liability—does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008).

That said, this issue need not be further addressed as the Court has already concluded that the evidence does not establish a violation of Clark's rights.[2] Thus, Defendants Lashbrook and Benton are entitled to summary judgment at to this claim.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 80) is **GRANTED** in its entirety. Plaintiff's claims against all Defendants are **DISMISSED WITH PREJUDICE**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close the case.

**IT IS SO ORDERED.**

**DATED: 2/22/2018**

                                              **s/ Staci M. Yandle**
                                              **STACI M. YANDLE**
                                              **United States District Judge**

---

[2] Defendants also assert that they are entitled to qualified immunity on Clark's claims. Because the Court has concluded that the evidence does not create a genuine issue of material fact as to whether Defendants violated Clark's First Amendment rights, it will not address the issue of qualified immunity.